■ DALE GOODMAN, Appellant, v 303 BEVERLY OWNERS CORP., Respondent.—In an action, *inter alia*, for a judgment declaring that the plaintiff is a rent-stabilized tenant of a certain apartment, the plaintiff appeals, as limited by her brief, from so much of an order of the Supreme Court, Kings County (Dowd, J.), entered May 23, 1990, as granted that branch of the defendant's motion which was for summary judgment declaring that the plaintiff is not a rent-stabilized tenant and that she is not entitled to a renewal lease.

Ordered that the order is affirmed insofar as appealed from, with costs.

The defendant 303 Beverly Owners Corp. was the sponsor and is currently the managing agent of a cooperative apartment building located at 303 Beverly Road in Brooklyn. On July 13, 1988, the plaintiff executed a subscription agreement to purchase the shares allocated to apartment 2-D for $115,000 and paid the defendant $11,500 as a down payment. At the same time, the plaintiff executed an interim lease allowing her to occupy the apartment prior to the closing at a monthly rent of $487.44.

The term of the interim lease was to be one year or until "the date of closing of title in the event [the] Offering Plan is declared effective", whichever was earlier. The subscription agreement and the lease provided that the plaintiff's failure to comply with any of her obligations under one agreement would be deemed a default under the other agreement, allowing the defendant to cancel both.

The plaintiff ceased paying rent on the lease after September 1988. The offering plan was subsequently declared effective and the plaintiff's closing was scheduled for July 13, 1989. She did not close title to the apartment. The plaintiff seeks to remain in the apartment as a rent-stabilized tenant.

9 NYCRR 2522.5 (h) (4) provides, in pertinent part:

"After the filing date, and prior to the plan being declared effective * * * if a vacancy lease herein called an interim lease for [a] housing accommodation [subject to this Code] is executed in connection with an agreement to purchase such housing accommodation or the shares allocated thereto, *pursuant to any Eviction Plan or Non-Eviction Plan * * ** such interim lease:

"(i) may provide that once the plan has been declared effective, *if the tenant fails to purchase his or her housing accommodation or the shares allocated thereto on the terms set forth in the subscription or purchase agreement, or otherwise terminates or defaults on the subscription or purchase agreement, such tenant may be evicted;* and

"(ii) may provide for a rental below the legal regulated rent which may, upon the abandonment or withdrawal of the plan, be increased to the legal regulated rent, provided the interim lease or other agreement clearly notifies the tenant of what that higher rent will be. *If the plan is abandoned or withdrawn, such tenant remains a rent-stabilized tenant"* (emphasis added).

It is clear from the foregoing that, had the defendant abandoned or withdrawn the plan, the plaintiff would have remained a rent-stabilized tenant. However, since the plan was not abandoned or withdrawn and the plaintiff failed to purchase her apartment on the terms set forth in the subscription agreement, she is not a rent-stabilized tenant and she may be evicted.

9 NYCRR 2522.5 (h) (4) is not in conflict with Administrative Code of the City of New York § 26-511 (c) (9-a). Administrative Code § 26-511 (c) (9-a) does not, as the plaintiff contends, limit the use of interim leases to eviction plans. In fact, Administrative Code § 26-511 (c) (9-a) makes no mention of interim leases at all. It simply provides that, if a building is converted to a cooperative or condominium pursuant to an eviction plan, a nonpurchasing tenant may remain in occupancy up to three years after the plan has been declared effective. Thus, Administrative Code § 26-511 (c) (9-a) is inapplicable to the situation covered by 9 NYCRR 2522.5 (h) (4) in which a prospective purchaser of a vacant apartment signs a subscription agreement to purchase the shares allocated to that apartment and takes occupancy of the apartment pursuant to an interim lease executed after the filing of the plan but before the plan is declared effective.

Those cases on which the plaintiff relies are inapposite.

*Moussazadeh v Wahnon* (127 AD2d 749), and *McVann v Myers* (137 Misc 2d 876) hold that a person leasing a cooperative apartment in a building subject to the Emergency Tenant Protection Act of 1974 from the shareholder and proprietary lessee of the cooperative apartment is a tenant within the meaning of the Emergency Tenant Protection Act and, as such, is entitled to all of the protective provisions of that Act and its applicable regulations, including the provisions governing the regulation of rents and a tenant's right to renew the lease upon the expiration of its term. However, the Emergency Tenant Protection Act only applies to housing accommodations located in the counties of Nassau, Rockland, and Westchester *(see,* 9 NYCRR 2500.8). Moreover, unlike the Emergency Tenant Protection Act, the New York City Rent Stabilization Law and Code (Administrative Code of City of NY § 26-501 *et seq.;* 9 NYCRR 2520.1 *et seq.)* specifically exempt from their coverage housing accommodations contained in buildings owned as cooperatives *(see,* Administrative Code of City of NY § 26-504 [a]; 9 NYCRR 2520.11 *[l]).*

We have considered the plaintiff's remaining contentions and find that they do not warrant reversal. Thompson, J. P., Miller, Pizzuto and Santucci, JJ., concur.